J. & O. EVANS v. CUMBERLAND MILLS.

*Judgment—Res Judicata—Trial.*

1. Where, in the trial of an action for damages for shortage in goods sold and delivered to plaintiffs, it appeared that the defendant, after delivering a part of the goods sold, had divided the balance due on the price into several amounts and brought action there on in a justice's court and the vendee had set up a counter claim for shortage, but the vendor recovered judgments from which the vendee did not appeal; *Held*, that the vendees (defendants in said actions) are estopped from claiming damages for shortage, except as to the goods which had not been delivered at the time of said judgments.

2. The justice's judgments are conclusive in a subsequent action to recover an overpayment, as to any payments alleged to have been made before such judgments were taken.

This was a CIVIL ACTION, tried before *Norwood, J.*, and a jury, at May Term, 1895, of CUMBERLAND Superior Court.

The contract to deliver 25,000 yards of cotton bagging, weighing twelve ounces to the yard, for twelve cents a yard, set forth in the complaint, was admitted in the answer, and testimony was heard on the trial as to certain breaches of this contract, and damages thereby, and the sum of one

hundred dollars claimed by plaintiffs to have been paid to defendant, in excess of what was due upon this contract.

The plaintiffs admitted the delivery by defendants of all the bagging except 106 rolls some time in October or November, 1889, but claimed that it lacked in length and weight, and introduced testimony tending to prove such a deficiency.

The 106 rolls of bagging above mentioned were not received until February, 1890, according to the uncontradicted testimony of the plaintiffs, and when so delivered were found to be short in measurement and of light weight, according to plaintiffs' testimony. There was evidence tending to prove that, between November, 1889, and the delivery of the 106 rolls of bagging, the plaintiffs had paid to defendants in cotton a considerable portion of contract price, and that defendants had brought nine suits before a justice of the peace before the said delivery of the 106 rolls for installments of said contract price, including the 106 rolls, and had recovered judgment, and that the same had been collected from plaintiffs with costs before the commencement of this action.

There was evidence tending to prove that, at these trials of these actions before the justice of the peace, the plaintiffs had pleaded the shortage, lack of weight, and nondelivery at that time of the 106 rolls as a counter-claim, and had objected to the amount claimed in these actions, as being more than was due from plaintiffs, and this testimony was not contradicted by defendants. There was testimony tending to show that plaintiffs had not withdrawn their counter-claim but had permitted the defendant, plaintiff, in those actions, to take the judgment against plaintiffs, upon the promise of one Robbins, then agent of the defendant, that defendant would make good any shortage. This testimony was excepted to by defend-

ant. James Evans, one of the plaintiffs, testified that plaintiffs had paid defendant one hundred dollars more than the contract price for the goods.

There was evidence tending to prove that the 106 rolls delivered after the judgment was taken were short in weight and measure, and the amount of such shortage, and also the amount of costs paid by plaintiffs in the justice's court, and said judgment. The plaintiffs were allowed to give evidence of the average shortage of the whole lot of bagging, and also of the 106 rolls, and defendant excepted to the admission of this testimony. The defendant submitted the following prayer for instructions to the jury:

The defendant asks the following special instructions:

"1st. If the jury shall find that this suit and the suits brought in the justice's court by the Cumberland Mills against J. & O. Evans related to the same subject matter, and related to the same contract between the parties, then, so far as the alleged cause of action in this suit was embraced in said suits is concerned, it is *res adjudicata*, and this action therefore cannot be maintained.

"2nd. So far as the claim for damages is concerned, by reason of injury to credit of plaintiffs, by reason of the judgments obtained and docketed against them, if the jury shall find that the said judgments were regularly and properly rendered, the plaintiffs have no cause to complain, and the damage to them, if any, is *damnum absque injuria* and will not support this action.

"3rd. Defendant asks the court to charge the jury that the judgments of *Cumberland Mills* v. *J. & O. Evans*, were regularly obtained and before a court of competent jurisdiction, and regularly docketed in the superior court of Cumberland county on the judgment docket, executions issued and the money paid thereon, and

"4th. That the said judgments were based upon matters

identically the same as on the basis of this present action, and the plaintiffs are estopped to prosecute this action.

"5th. That, according to the plaintiffs' admission, the same matters and causes of action, embraced in the present action, were the same as embraced and covered in the several actions before the magistrate's court November 15th, 1889.

"6th. That, if the causes of action are the same, then all matters of defense which J. & O. Evans then had should have been asserted and made, and if not so done, they are waived, and they cannot now maintain this action upon them."

The court submitted the following issues to the jury:

"1st. Was defendant guilty of a breach of his contract with plaintiffs? Answer, 'Yes.'

"2nd. What damages have the plaintiffs sustained by reason of such breach of contract? Answer, '$173.94.'

"3rd. What other amounts, if any, are due plaintiffs from defendants? Answer, '$100 with interest upon the whole amount from July the 9, 1890, to present date.'"

The defendants excepted to the issues as submitted by the court.

The court charged the jury as follows:

"The court, among other things, charged the jury that the record of the justice's court could not be attacked collaterally by parol evidence in this action, and that as said record showed that the plaintiffs who were defendants in those actions had pleaded the breaches of contract, which are shown by evidence to be the same relied on in this action, except as to the shortage on 106 rolls of goods which had not been delivered at the time the judgments were rendered, as a counter-claim, and the record failed to show that said counter-claims had been withdrawn before the judgments were rendered, they must not consider any of

the testimony which tended to prove any such breaches
of contract which occurred before said counter-claim was
pleaded, and said judgments rendered, but should consider
only the shortage on said 106 bales, freight and drayage,
and $100 claimed by the plaintiffs to have been paid to
defendant in excess of their debt to it." (Defendant
excepted)

The court also charged the jury that, upon the testimony
in the case, if they believed it, then plaintiffs were not
entitled to recover anything as damages to their credit by
reason of the judgments rendered by the justice of the
peace against the plaintiffs.

The defendant excepted to the charge.

The verdict was in favor of the plaintiffs. The defend-
ant moved the court to set aside the verdict. The motion
was overruled, and the defendant excepted.

The defendant then entered a rule for a new trial,
which was discharged, and defendant excepted.

The court then rendered judgment in favor of plaintiffs,
and the defendant appealed.

*Mr. N. W. Ray*, for plaintiff.

*Messrs. R. P. Buxton* and *T. H. Sutton*, for defendant
(appellant).

MONTGOMERY, J.: In October, 1889, the defendants in
this action contracted to manufacture and deliver to the
plaintiffs a large lot of cotton bagging. All of the goods
were delivered to the plaintiffs within about thirty days
after the contract was entered into, with the exception of
106 rolls thereof, and the plaintiffs had paid within that
time a considerable amount on the contract price. On the
15th of November following, and before the 106 rolls had
been delivered, (though delivery had been tendered,) the

defendants divided the amount which they claimed to be still due to them by the plaintiffs into several sums, each under two hundred dollars, and brought suit upon them in a court of a justice of the peace. The defendants in that action (the plaintiffs in this) set up counter-claims, alleging injury and damage in that the weights and measures of the bagging were short. Judgments were, however, recovered by the defendants in this action, (the plaintiffs in those,) and there were no appeals therefrom.

The present action is brought by the plaintiffs to recover damages for the alleged shortage in weights and measures of the whole lot of bagging. His Honor was right in holding that the plaintiffs were estopped by the justice's judgments to claim such damages, except for the 106 rolls which were not delivered until after the justice's judgments; and as to the latter he properly allowed them to introduce testimony as to the shortage in weights and measures. After an examination, however, of the testimony in this case, we are of opinion that the same was not sufficient to have been submitted to the jury. It did not tend to prove any damage to the plaintiffs. It was not sufficiently definite to enable the jury to form any idea of pecuniary damage. The testimony of James Evans, one of the plaintiffs, is the only testimony on that point, and is as follows: "I never saw more than twenty-five rolls of it weighed, and we computed weight of the balance from that; that was the way Robbins said to do it. There were eighty-one rolls that we did not weigh. I do not know whether or not the eighty-one bales would have weighed enough to make up the deficiency in the twenty-five rolls. There was a difference of several ounces between the weights of some of the rolls." In their complaint in this action the plaintiffs allege "that they were required to pay, and did pay, to the defendants $100 more

EVANS *v.* CUMBERLAND MILLS.

than the goods delivered would amount to, even at measurement and weight which defendants claim for amount delivered." The defendants denied this in their answer. The only proof offered by the plaintiffs to make good the allegation was the testimony of James Evans, one of the plaintiffs, and is as follows: "We paid them about $100 more than the bill would have been, if the goods had been according to contract." If this allegation of the plaintiffs is founded on an over-payment by mistake made before the judgments were had, it should have been pleaded and proved at the trials before the justice. The justice's judgments are conclusive against any payments alleged to have been made before the judgments were had. If the allegation is based on a payment by mistake made to the sheriff on the executions in his hands, the payment ought to have been set out in the complaint with particularity and certainty, and proved. The presumption is that the executions in the sheriff's hands were correct and that he collected only what was due on them. We are of opinion that the allegation and the testimony introduced to support it were both too indefinite and insufficient to justify either verdict or judgment. There is error.                                   New Trial.